IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MORRIS SPEIGHT-BEY,
Foreign Principal,

        Petitioner,

v.                                                  Civil Action No. 1:15cv177
                                                    (Judge Keeley)

CHARLES WILLIAMS, Warden,[1]
Alien Property Custodian,

        Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On July 29, 2015 in the United States District Court for the District of Columbia, the *pro se* petitioner, Morris Speight-Bey ("Speight-Bey"), an inmate at FCI Gilmer, in Glenville, West Virginia, filed a hand-written petition against the respondent pursuant to 28 U.S.C. § 2241. Because he was incarcerated in this district, on August 20, 2015, the case was transferred to this district and opened as Case No. 2:15cv63. Because the petition was not on an approved form from this district, on August 24, 2015, an Order/Notification was entered, advising petitioner that it would be struck because it was not in compliance with the Local Rules of Prisoner Litigation Procedure; Petitioner was advised to re-file his petition within thirty days and a new case would be opened and the original one closed.

---

[1] At the time petitioner filed his §2241 petition, Charles Williams was the Warden of FCI Gilmer. Subsequently, Jennifer Saad was named as Warden of FCI Gilmer. Pursuant to Fed.R.Civ.P. 25(d)(1), Jennifer Saad is automatically substituted as the respondent in this action.

On October 9, 2015, Speight-Bey re-filed his petition on a court-approved form and the instant case was opened.² Along with his petition, petitioner filed a motion to proceed *in forma pauperis* ("IFP") with supporting documents. By Order entered October 13, 2015, Speight-Bey was granted leave to proceed as a pauper but directed to pay the $5.00 filing fee. On November 2, 2015, petitioner filed a document title as "Motion in Support of Affidavit and Notice to the Agent for the Verification Upon Oath of Affirmation Juart [sic] Declaration of My Foreign Principal Private Sovereign Sui Juris Moroccan American National Indigenous Moor." Petitioner paid the $5.00 filing fee on November 20, 2015.

The undersigned conducted a preliminary review of the petition on November 24, 2015, and determined that summary dismissal was not appropriate at that time. Accordingly, a show cause order was entered. On December 15, 2015, the respondent filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Before the Court could issue a Roseboro³ Notice, on December 28, 2015, petitioner filed a response, styled "Motion Requesting Respectfully for a Relief to be Granted in Favor of the Petition of Title 7, Rule 55(a)(d); and Rule 54(c); and by My True Affidavit as Evidence That is Recorded as to the Political Private Status Classified A-1 Truth Freehold by Inheritance Library of Congress Diplomatic Immunity Registration No AA22141 . . ." On March 4, 2016, petitioner filed a Notice of Interlocutory Appeal with the Fourth Circuit;⁴ the Interlocutory Appeal was dismissed by unpublished *per curiam* opinion on May 23, 2016.

---

² Case No. 2:15-cv-00063 was dismissed on October 13, 2015.

³ Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975).

⁴ In the Notice of Appeal, petitioner asserted that he was appealing "from an order Nor [sic] an [sic] Dismissal that wasn't made [sic] in this civil case[.]" (Dkt.# 17). In the informal brief for the appeal, petitioner again contended he was a "Moroccan American National Indigenous Moor." He listed the dates of the orders for which he was seeking

This matter, before the undersigned for a Report and Recommendation pursuant to LR PL P 2 is ripe for review.

## II. Facts

On April 2, 1991, the Superior Court of the District of Columbia sentenced petitioner to 5 to 15 years and 6 months in prison for the offenses of burglary, attempted unlawful use of a vehicle, and destruction of property in combined case numbers F-12799-90 and F-10451-90.[5] On September 20, 1996, Petitioner was released on parole, to be supervised until the expiration of his sentence on September 23, 2006.[6]

On June 2, 1999, the D.C. Board of Parole revoked petitioner's parole based upon a Maryland state conviction for burglary.[7] He was re-paroled on June 14, 1999, with the expiration of his original sentence to be March 3, 2009.[8]

While on parole, Mr. Speight again engaged in new criminal conduct and on July 29, 2002, in Superior Court of the District of Columbia, was sentenced to 3 years in prison and 3

---

review; inexplicably, they included the order granting IFP and the order directing the respondent to show cause in this case; one date before this case was even initiated, presumably the date that the notification of dismissal in Case No. 2:15cv63 was entered; as well as dates on which no orders were entered at all; and included some dates on which petitioner filed motions or other documents in this case. (4th Cir. Dkt.# 4 at 1)(16-6324).

[5] Dkt.# 15-2 at 2 – 3, and 12.

[6] See Dkt.# 15-2 at 4. Before Mr. Speight was actually released to the community, he served a 27-month sentence imposed by the U.S. District Court for the Eastern District of Virginia for escape and was released on November 20, 1997.

[7] Dkt.# 15-2 at 6.

[8] See Dkt.# 15-2 at 7. The expiration of his sentence was extended because petitioner received no credit for the time spent on parole as required by D.C. Code § 24-406(a).

years supervised release for unauthorized use of a vehicle in case number F-1643-02.[9] No action was taken to revoke his parole in the original sentence.

After his release on that sentence, Petitioner failed to comply with the conditions of parole and, on July 31, 2007, the Parole Commission revoked his parole, forfeited all of the time he had spent on parole, and granted him re-parole after the service of 28 months.[10] On January 13, 2008, Petitioner was released on parole with the expiration of his original sentence from case number F-12799-90 to be September 15, 2016.[11]

On November 11, 2009, the Commission revoked petitioner's parole, forfeited all of the time he had spent on parole, and granted re-parole on December 10, 2009.[12] After the parole date was rescinded for release planning purposes, petitioner was released on parole on February 8, 2010, with a full term expiration date of September 16, 2017.[13]

By a March 18, 2011 Notice of Action, the Parole Commission revoked petitioner's parole, forfeited all of the time spent on parole based upon his separate convictions for possession of cocaine and theft, and granted re-parole on December 27, 2012.[14] After petitioner was sanctioned for a halfway house escape, he was again released to parole on February 10, 2014 with a sentence expiration date of June 12, 2018.[15]

---

[9] Dkt.# 15-2 at 19.

[10] Dkt.# 15-2 at 28.

[11] Dkt.# 15-2 at 31.

[12] Dkt.# 15-2 at 34.

[13] Dkt.# 15-2 at 37.

[14] Dkt.# 15-2 at 40.

[15] Dkt.# 15-2 at 44. The expiration of petitioner original sentence has been extended with each revocation, as required by D.C. Code § 24-406(a). This was the subject of Speight v. Fulwood, Civil Action No. 10-1777 (D.D.C.

On July 31, 2014, the Parole Commission issued a warrant for petitioner based upon information that he used illegal drugs, failed to submit to drug testing as required, and had been arrested for attempted burglary, receiving stolen property and destruction of property.[16] Subsequently, he was convicted of attempted burglary and on December 30, 2014, he was sentenced by the Superior Court of the District of Columbia to 42 months in prison, to be followed by 3 years of supervised release.[17] The Commission's July 2014 warrant has been placed as a detainer while Petitioner presently serves this sentence.[18]

According to the Bureau of Prisons' ("BOP") Online Inmate Locator, petitioner is now 52 years old and has a projected release date of August 7, 2017.

### III. Contentions of the Parties

#### A. The Petition

The petitioner has submitted what purports to be a handwritten, single-spaced petition for a writ of habeas corpus under 28 U.S.C. § 2241, but which is a list of rambling, repetitive, incoherent, perplexing claims. It appears that petitioner is attempting to contend that he has been unlawfully detained by the Superior Court of the District of Columbia and the United States Parole Commission ("USPC"). Specifically, he contends that

1) under Fed. R. App. P. 23(a), he is "unlawfully detained under a false presentment and denationalized by an artificial status statute of the 14th Amendment, and not by a human being identity of his Moroccan American Nationality and Foreign State Principal of a Jurat Jurisdiction that is not of the statutory residence or citizen on the United States Uniform Commercial Laws at birth for contracts of the Commodity Bond; and Genocide 18 U.S.C. § 1091 (a)(d)(e)(A); 37

---

April 25, 2011), in which the court found that the time petitioner had spent on parole was correctly forfeited by the parole revocation. See Dkt.# 15-2 at 52.

[16] Dkt.# 15-2 at 47 - 50.

[17] Dkt.# 15-2 at 9.

[18] Dkt.# 15-2 at 51 and 11.

U.S.C. § 201; 2 U.S.C. § 1602 (8)(ii); 5 U.S.C. § 7511(a)(b)(1)(2) Ch. 11, 48 U.S.C. § 1; 8 U.S.C. § 1254 (a)(1)(b)(B)(3); 8 CFR § 1101.2 and Part 2; 8 U.S.C. § 1401[;] 8 U.S.C. § 1408; 8 U.S.C. § 1103 (a)(3)."

2) He is "not of the residence or citizen of the union United States Corporation Public Politic status statute of Congress as an artificial personal propert [sic] of the 14th Amendment at birth for the use of commercial practices of the Uniform Commercial Code for business commodity bond purposes and as an entrust to the alien property custodian of Puerto Rico account." He is a "Moroccan American Nation of Moorish domicile privat [sic] decent [sic] at birth under the protection as government organization and Vienna Convention."

3) This is a constitution cognizable claim and foreign principle of a foreign state violation of the Superior Court and the United States Parole Commission for solicitation of proxy of non-material facts, § 14(a) of the Security exchange [sic] Act (15 U.S.C.S. § 78 n(a) of Title 8 of Section 1103, and title 50 U.S.C.S. § App. § 1954 of Displaced Persons Act of 1948 for claims of unfair labor practices of presentments in a factitious state jurisdictional status statute court unlawful pursuant to non-citizens or residence of a private Moroccan American National of the Friendship and Treaty of Peach pursuant to: 22 U.S.C. § 4308 (b), and 4309 (b)(1)(2).

4) "Title 28 U.S.C. § 1332 Diversity of Citizenship; amount in controversy; cost; amount in the liability of the contract made in my name as a [sic] Artificial Person in the Trustee of trust account made at birth of the county recorder of Pitt County, NC and for the Holder and that deliver in part as an entrust to the Alien Property Custodian for Business Benifits [sic] sold perform by the treasury registry direct entry of the comptroller secretary of Puerto Rico of liability existence lawful admission of lawful identity residence and citizens alike, VISA, PASSPORTS within the territory and waters, continental or insular are subject by lawful status of a nationality of the public Politic or other corporated body of the Uniform Commercial Code; However, Title 35 U.S.C. § 351 (e)(f); stolen property of program fraud civil penalties § 35.1 (b)(c) of Title 31 U.S.C. § 3809; Title 1 CFR § 457.101 and Part 457 of Section 504; 42 U.S.C. § 12181; 42 U.S.C. § 12131(1)(2); has been Denationalized. These claims are of the ex post facto clause, and is [sic] a prima facial [sic] evident [sic] of U.S. citizenship. I have been Denationalized by the Superior Court and the United States Parole Commission . . . Moreover, I was then transfured [sic] in a [sic] interstate commerce outside the Jurisdiction of Washington D.C. to a third party of Gilmer, Glenville, West Virginia for business of conveyance and garnishment in their unlawful insolventcy [sic] within the meaning of contract trade in my name Morris Speight Jr. A.K.A. Morris Lee Harper of the 4 last diggits [sic] and Social security of 70114, the personal property of Morris Speight-Bey the Moroccan American National of the Juraat Jurisdiction and Domiciled Foreign Principle [sic]."

Petitioner appears to admit that he has raised these grounds previously in other courts; he asserts the United States Supreme Court is "currently awaiting an [sic] return of this Motion and

outcome to make a decision."[19] He also implies that he raised these claims in the Superior Court of Washington D.C. previously.[20] A review of PACER reveals that he raised similar issues in the District Court for the District of Columbia in 2014.[21]

As relief, he requests that the Court order his release immediately.[22]

**B. <u>Respondent's Motion to Dismiss or in the Alternative, Motion for Summary Judgment</u>**

The respondent contends that the case should be dismissed or summary judgment granted in its favor because

1) petitioner's claim that he is detained unlawfully in custody has no merit;

2) petitioner's claim that the USPC lacks the authority to take action to revoke his parole based on the parole violator warrant that has been placed as a detainer has no merit;

3) there is no merit to petitioner's claim that he is a Moroccan national and that as such, international or Treaty law applies to him;

4) contrary to his claim, petitioner's transfer to and incarceration in federal prison outside of the District of Columbia is lawful, pursuant to D.C. Code § 24-101; and

5) the statutes that petitioner cites to: 28 U.S.C. § 1602; 22 U.S.C. § 4303; 22 U.S.C. § 4304; and 8 U.S.C. § 1401, do not apply to him, and there is no basis for this Court to release him from custody.

**C. <u>Petitioner's Response</u>**

Petitioner's response, titled "Motion Requesting Respectfully for a Relief to be Granted in Favor of the Petition of Title 7, Rule 55(a)(d); and Rule 54(c); and by My True Affidavit as Evidence That is Recorded as to the Political Private Status Classified A-1 Truth Freehold by

---

[19] Dkt.# 1 at 7.

[20] Petitioner filed another § 2241 petition in this court on May 23, 2016, challenging his sentence. <u>See</u> Case No. 3:16cv69.

[21] <u>See</u> D.D.C. Case No. 1:14cv2016; dismissed for failure to state a claim and as frivolous.

[22] Dkt.# 1 at 8.

7

Inheritance Library of Congress Diplomatic Immunity Registration No AA22141 . . ." reiterates his claims and attempts to refute the respondent's arguments on the same.

## IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible

on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary

judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. Analysis

A district court should construe *pro se* petitions liberally, no matter how unskillfully pleaded. See Haines v. Kerner, 404 U.S. 519, 520 (1972). "Although the pleading requirements are construed liberally, '[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted.'" 2 Moore's Federal Practice § 12.34[1][b], at 12-60 (3rd ed)." Minone v. McGrath, 435 F. Supp. 2d 266 (S.D.N.Y. 2006). This rule requires the Court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction. It does not mean that the Court is authorized to become *pro se* litigant's advocate. Despite the liberal construction afforded *pro se* pleadings, the court will not construct arguments or theories for the petitioner in the absence of any discussion of those issues. The requirement of liberal construction also does not mean that the court can ignore a clear failure in the pleading to allege facts that set forth a claim cognizable in a federal district court. Weller v. Dept. of Social

Services, 901 F.2d 387 (4th Cir. 1990). District courts are not required "to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d at 1278, (adding that "[d]istrict judges are not mind readers").

Rule 1(b) of the Rules Governing Section 2254 Cases permits the Court to "apply these rules to a habeas corpus petition [under § 2241]." Rule 12 makes the Federal Rules of Civil Procedure applicable to habeas petitions "to the extent that they are not inconsistent with any statutory provision or these rules." Unlike Fed. R. Civ. P. 8(a)'s minimal pleading requirements, Rule 2(c) of the Rules Governing Habeas Corpus Cases requires a more detailed statement. A petitioners must "specify all the grounds for relief available to [him]" and "state the facts supporting each ground." Mayle v. Felix, 545 U.S. 644, 649 (2005). This "demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted' or to summarily dismiss the petition." Id. at 656 (quoting 28 U.S.C. § 2243). This demand is also required because the government must "address the allegations in the petition" in order to respond to a show cause order." Id. (quoting Gov'g Rule 5(b)).

The undersigned prefaces his analysis by declaring that the claims in the petition are so rambling, disjointed, and inarticulate they are impossible to comprehend.[23] Petitioner's

---

[23] The District Court for the District of Columbia, in denying a § 2241 habeas corpus petition the petitioner filed there, noted that that "petition presents the type of fantastic or delusional scenarios warranting dismissal of a case as frivolous. See Nietzke v. Williams, 490 U.S. 319, 325 (1989); Best v. Kelly, 39 F.3d 328, 330-31 (D.C. Cir. 1994)(a court may dismiss claims that are "essentially fictitious" – for example, where they suggest "bizarre conspiracy theories . . . [or] fantastic government manipulations of their will or mind") (citations and internal quotation marks omitted); Crisafi v. Holland, 655 F.2d 1305, 1307 – 08 (D.C. Cir. 1981) ("A court may dismiss as frivolous complaints . . . postulating events and circumstances of a wholly fanciful kind.")." See D.C. Cir. Case No. 1:14cv2016, Dkt.# 3 at 3.

subsequent filings[24] are similarly cryptic. The Court is unable to fathom the substance of petitioner's claims; his petition is unintelligible. It appears that he contends that he is a Moroccan American National of Moorish domicile under the protection of the government and the Vienna Convention; elsewhere he seems to imply that he was born in Pitt County, North Carolina. The respondent contends that there is no merit to petitioner's claim that he is a Moroccan national and that as such, no international or Treaty law applies to him. Petitioner claims he has been "denationalized by an artificial status statue of the 14th Amendment." He avers that he is being unlawfully detained; has been transferred illegally in interstate commerce to the Warden of FCI Gilmer, who he refers to as the "Alien Property Custodian" from Washington D.C. for the purposes of business benefits sold or performed by the comptroller secretary of Puerto Rico. The respondent contends that petitioner is lawfully detained and the records attached to its dispositive motion support its claims.

Petitioner's claims are nonsensical, fantastic, and make no sense. In summary, Petitioner rambles incoherently and does not assert factual allegations that give rise to a valid basis for relief which this Court has the authority to grant.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Dkt.#15) be **GRANTED,** and petitioner's §2241 petition (Dkt.# 1) be **DENIED** and **DISMISSED with prejudice.**

---

[24] See document titled "A Motion in Support of Affidavit and Notice to the Agent for the Verification Upon Oath of Affirmation Juart Declaration of my Foreign Principal Private Sovereign Sui Juris Moroccan American National Indigenous Moore," Dkt.# 8, and petitioner's response to the respondent's dispositive motion, styled as Motion Requesting Respectfully for a Relief to be Granted in Favor of the Petition of Title 7, Rule 55(a)(d); and Rule 54(c); and by My True Affidavit as Evidence That is Recorded as to the Political Private Status Classified A-1 Truth Freehold by Inheritance Library of Congress Diplomatic Immunity Registration No AA22141 . . ." Dkt.# 16.

Any party may file, **within fourteen (14) days** after being served with a copy of this Recommendation, with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

Pursuant to Fed.R.Civ.P. 25(d)(1), the Clerk of Court is **DIRECTED** to substitute Jennifer Saad for Charles Williams as the respondent in this action.

The Clerk is further directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to transmit copies of this Report and Recommendation to all counsel of record via electronic means.

DATED: May 31, 2016

                                              /s/ James E. Seibert
                                              JAMES E. SEIBERT
                                              UNITED STATES MAGISTRATE JUDGE